IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG STEVENSON, | No. C-09-0759 MMC |
|     Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| BEN CURRY, Warden | |
|     Respondent. | |

On February 20, 2009, petitioner Craig Stevenson ("petitioner"), a California state prisoner, filed, pursuant to 28 U.S.C. § 2254, the above-titled Petition for a Writ of Habeas Corpus, by which he challenges a 2006 decision by the Board of Parole Hearings ("Board") finding him unsuitable for parole. Respondent has filed an Answer, to which petitioner has filed a Reply. Having reviewed the parties' respective submissions and the record provided in connection therewith, the Court concludes petitioner is not entitled to relief based on the claim presented, and will deny the petition.

**BACKGROUND**

On January 18, 1978, petitioner shot and killed George Michaud ("Michaud"), a 47-year-old man with whom petitioner was residing. (Ans. Ex. 2 at 1.) Petitioner was found guilty of first degree murder with personal use of a firearm, see Cal. Pen. Code §§ 187, 12022.5, and was sentenced to a term of seven years to life in state prison (Ans. Ex. 2 at 1.) On November 7, 1978, petitioner was received by the Department of Corrections. (Id.)

On December 7, 2006, the Board conducted a hearing and thereafter found petitioner to be unsuitable for parole for a period of two years, on the ground petitioner "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Pet. Ex. A at 1, 161, 168.)

In reaching its decision, the Board accepted the following facts taken from the Statement of Facts contained in the probation officer's report:

> On January 18, 1978, homicide officers went to 1117 Second Street in Manhattan Beach after the body of George Michaud. . ., a 47-year-old male, was found lifeless, lying on the floor with a gun in his right hand. Initially, the circumstances pointed towards suicide[;] however, subsequent investigation by homicide investigators revealed that [petitioner] may have been the perpetrator of the death. As a result, he was arrested and convicted by a jury. An autopsy done by the Los Angeles Coroner placed the cause of death as massive hemorrhage due to gunshot wounds to the abdomen. It also revealed that [the] victim was shot in the head after he was already dead. It was evidenced that there were blows to the head, causing a cranial injury.

(Id. at 9-10.) As the Board explained, petitioner "had set it up to look like a suicide [but], in fact, he had murdered the victim and left him there and then returned with a neighbor to claim [ ] Michaud had shot himself." (Id. at 162.)

At the 2006 parole hearing, the Board reviewed petitioner's record, including the circumstances of his commitment offense, his unstable social history, his behavior in prison, psychological reports, his parole plans, and the opinion of law enforcement on the question of parole. (Id. at 161-168.)  With respect to the commitment offense, the Board found the crime was carried out in a "dispassionate," "very cruel," and "calculat[ed]" manner, that "demonstrate[d] a very callous disregard for human suffering." (Id. at 165.) The Board also found the motive for the crime was "inexplicable or trivial in relation to the offense" (id. at 161), in that, as described by petitioner at the subject parole hearing, petitioner had shot the victim because the victim, apparently partly in jest, had made sexual overtures to petitioner (see id. at 47-48).

Additionally, while noting petitioner's lack of prior criminal convictions, the Board took note of petitioner's "very unstable social history" and "record of violence" (id. at 162) based on petitioner's having been found "civilly liable for the murder of [his] first wife and

unborn child" prior to the commitment offense (id. at 166).

With respect to petitioner's institutional behavior, the Board acknowledged that petitioner had "programmed very well," and that he had only four "counseling chronos" and no "serious disciplinary reports. (Id. at 162.)

Additionally, the Board acknowledged a psychological report, which assessed petitioner "as being a less than average risk for violence, compared to other level II inmates." (Id. at 163.) The Board found the report "inconclusive" however, because the author also reported therein that petitioner had been diagnosed with an "Axis II personality disorder," which "had not been addressed." (Id. at 163.) Further, the Board expressed some concern with the report's description of petitioner as having a "well-buttressed answer for each allegation" (id.) of prior violent conduct, including the "strangulation death" of his former wife. (See Ans. Ex. 1, Part 4 at 000327).

After a full hearing, during which all of the above evidence was considered, the Board found petitioner unsuitable for parole. (Pet. Ex. A at 161-68.)

In response to the Board's decision, petitioner filed state habeas petitions, later denied, in the Los Angeles County Superior Court, California Court of Appeal, and California Supreme Court. (See Ans. Exs. 2, 4, 6.) In 2009, petitioner filed the instant federal petition, alleging the Board's decision was not supported by any evidence, in violation of petitioner's Fifth, Eight, and Fourteenth amendment rights to due process and the prohibition against cruel and unusual punishment.

**DISCUSSION**

**A.    Standard of Review**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's

adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412,13 (2000). A federal court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1). Habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795 (2001) (internal quotation and citation omitted).

The state court decision implicated by 2254(d) is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091–92 (9th Cir. 2005). Where there is no reasoned opinion from the highest state court to have considered the petitioner's claims, the district court looks to the last reasoned state court opinion, which, in this instance, is the opinion of the Los Angeles County Superior Court. (See Ans. Ex. 2); see also Nunnemaker, 501 U.S. at 801,806; Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

**B.    Petitioner's Claims**

Petitioner claims the Board's decision was not supported by any evidence, in violation of petitioner's Fifth and Fourteenth Amendment rights to due process and his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment. (Pet. at 11, 24.)[1] The superior court rejected these claims, finding the Board's decision was supported by some evidence that "petitioner present[ed] an unreasonable risk of danger to society and [was] unsuitable for parole" and that the Board relied on factors other than and in addition to the circumstances of the commitment offense. (Ans. Ex. 2 at 1.)

A denial of parole complies with due process provided there is "some evidence" to

---

[1] Because petitioner's cruel and unusual punishment claim constitutes no more than a reiteration of petitioner's due process claims, the Court discusses all such claims together.

4

support the parole board's decision. Sass v.California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006). A parole board's decision deprives a prisoner of due process if such decision is not supported by "some evidence in the record," or is otherwise "arbitrary." See Superintendent v. Hill, 472 U.S. 445, 454–55 (1985); Sass, 461 F.3d at, 1129. Further, the evidence underlying the parole board's decision must have "some indicia of reliability." See McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002). Accordingly, if a parole board's determination with respect to parole suitability is to satisfy due process, such determination must be supported by some evidence having some indicia of reliability. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005).

Additionally, in assessing whether there is some evidence to support the Board's denial of parole, this Court must consider the regulations that guide the Board in making its parole suitability determinations. Pursuant to such regulations, "[a] life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a). The regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable for parole. Id. § 2402(c)–(d).[2] One circumstance tending to show an inmate's unsuitability is that the crime was committed in an "especially heinous, atrocious or cruel manner." Id. § 2402(c)(1). Two factors that the parole authority may consider in determining whether such a circumstance exists are whether "[t]he offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in relation to

---

[2]The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. 15 Cal. Code Regs. § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history;(7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Id. § 2402(d).

1 the offense." Id. § 2402(c)(1)(D) & (E).  Another circumstance tending to show an
2 unsuitability is an "unstable social history."  Id. § 2402(c)(3).

3       It is now established under California law that the task of the Board is to determine
4 whether the prisoner would be a danger to society if he or she were paroled.  See In re
5 Lawrence, 44 Cal. 4th 1181 (2008).  Consequently, the constitutional "some evidence"
6 requirement is that there exists some evidence that the prisoner constitutes such a danger,
7 not simply that there exists some evidence of one or more of the factors listed in the
8 regulations as considerations appropriate to the parole determination.  Id. at 1205–06.

9       In that regard, however, a parole authority's continued reliance on the circumstances
10 of the commitment offense as the sole basis for denying parole can, over time, raise due
11 process concerns.  See Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir. 2003).  "[I]n some
12 cases, indefinite detention based solely on an inmate's commitment offense, regardless of
13 the extent of his rehabilitation, will at some point violate due process, given the liberty
14 interest in parole that flows from the relevant California statutes."  Irons v. Carey, 505 F.3d
15 846, 854 (9th Cir. 2007).

16       Here, the Court cannot say the state court was unreasonable in concluding there is
17 some evidence to support the Board's decision that petitioner would be a danger to society
18 if released.  In particular, the record contains some evidence to support the Board's finding,
19 including the circumstances of the commitment offense, an unstable social history, and
20 prior violent conduct.

21       First, some evidence exists to support the Board's determination that the
22 circumstances of the commitment offense indicated petitioner presented a risk of danger to
23 society if released.  The record contains evidence that the commitment offense was
24 "especially heinous, atrocious, or cruel," in that the crime, as the Board found, "was carried
25 out in a "dispassionate" and "calculat[ed] manner," that "demonstrate[d] a very callous
26 disregard for human suffering."  (See Pet. Ex. A at 165); 15 Cal. Code Regs. § 2402
27 (c)(1)(B),(D).  Specifically, as the superior court observed, "petitioner fatally shot the victim,
28 and then shot him again in the head after he was dead in order to make it appear that the

victim had committed suicide" (Ans. Ex. 2 at 2) and, as the Board noted, the victim "did not die immediately (see Pet. Ex. A at 165 (citing autopsy report)). The record further supports the Board's finding that petitioner's motive was "trivial" in relation to the offense, see 15 Cal. Code Regs. § 2402(c)(1)(E), as the victim posed no threat of violence to petitioner. Although at some point in the future, the circumstances of the commitment offense may cease to have the same probative value as to the question of petitioner's dangerousness, they constitute, as of the time of the Board's decision, some evidence to support the Board's finding.

Petitioner's unstable social history, which the Board also considered, constitutes further evidence of petitioner's unsuitability for parole. Michaud represented the third death for which petitioner had been found legally responsible. Although petitioner did not suffer a criminal conviction based on the two earlier deaths, the civil judgment against petitioner was supportive of the Board's ultimate determination that petitioner "continue[d] to be unpredictable and a threat to others." (Pet. Ex. A at 164.); see 15 Cal. Code Regs. § 2402(c)(2),(3).

In sum, the Board's decision is supported by some evidence having some indicia of reliability, including evidence other than the circumstances of the commitment offense.

## CONCLUSION

Because the record contains, at a minimum, some evidence to support the Board's finding that petitioner would present an unreasonable risk of danger to society if released, the Court finds the state court's determination was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, nor can the Court say it was based on an unreasonable determination of the facts.

Accordingly, the petition for a writ of habeas corpus is hereby DENIED.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: December 31, 2009

MAXINE M. CHESNEY
United States District Judge